Good morning, Your Honors. Adam Doyle on behalf of Mr. Urbano Torres-Giles, and may it please the Court. Frequently in the Southern District of California, and I assume in courts throughout the Ninth Circuit, as well as throughout the federal courts, sentencing recommendations as part of Rule 11C1B agreements, and I'll refer to those agreements as Type B agreements, as a little shorthand. Frequently, district court judges decline to follow the sentencing recommendations in those types of plea agreements. What is much less common, and what is, in this case, very unique from Mr. Court Judge, explicitly, not just declining to follow the joint recommendation of sentence, but explicitly rejecting the entire plea agreement. So, in doing so, implicitly rejecting every single provision, every single word, every single effect. Well, the judge didn't reject. The judge was upset that they were giving this person the same recommended sentence that they previously had given. That's what the judge rejected. Isn't that the case? Your Honor, that, during sentencing, was my initial understanding of what the district court judge was saying. But, in fact, according to the transcript, and it's made very explicit and very, I'll say, passionate by the district court judge, that is, in fact, not what he was doing. After the sentence was pronounced, the district court realized that Mr. Torres-Gilles, under the terms of the agreement, would have the ability to appeal. He did not agree with that waiver of appeal provision, and he said, I reject the plea agreement. I then, as the trial counsel, asked the court what it meant by that, and for two paragraphs, which is on page 11 of my opening brief, he said, no, I just reject it. The purpose of the plea agreement is to promote finality, and he goes on, I disagree with the decision. I'm not going to be a party to that. I'm not going to put my imprimatur. I reject it. Can I ask this? Assuming we agree that the court rejected this type B agreement, haven't our cases said that the rejection of a type B doesn't convert it into a type C or a binding type agreement? Well, there is the Montoya case, which the government cited. And Hernandez-Gomez, as well, is what I'm referring to. Hernandez-Gomez, Your Honor? Yes. I believe Hernandez-Gomez was, well, it was an unpublished case. It was, but I guess my question would be, can you cite any case law that would say that the rejection of a type B agreement somehow converts it into a binding plea agreement? I cannot cite a case because I think this is such a unique set of facts. And the facts in the Hernandez-Gomez case, as well as in the Montoya case, from my reading of those cases, are distinguished on several points. And so I'll turn to Montoya. I think those two cases are fairly similar in what they say. But Montoya, the published case, first of all, the timeline is different. I believe from reading those two cases, the rejection of the sentencing recommendation occurred before a sentence was pronounced. So we have that timeline issue, which I do think is important. Perhaps more importantly is those two cases dealt with, is it appropriate for a judge to reject the sentencing recommendation of a type B plea agreement? And does the rejection of that then turn it into a type C plea agreement? Which Montoya said no. The statute doesn't. Does the statute support that result? So I'm glad Your Honor brought up, and we're referring to Rule 11 here. I think it's important to look at the text of Rule 11 because it does not encompass what happened in this particular case. Rule 11 says if you have a type C plea agreement and the judge is planning to reject it, he has to inform the defendant, the defendant withdraws the plea. Correct. Correct, Your Honor. And so there is, there is. And there's no such analogous language in B. That's correct. In B, the language is the judge can follow the sentencing recommendation or the judge may not. There is nothing having to do with whether the district court judge can reject the entirety, every single provision. Because as we know, I mean, the plea agreement in this case, it was 14 pages. The sentencing guidelines and recommendation only encompasses about a page and a half. Well, let's talk about, I was about to make the same point, which is, did the court really reject the entire plea agreement because it was using many of the factual predicates from that plea agreement in order to base its sentencing decision, including prior criminal history and other things? So I take your point that the court used the word rejected and seemed to have a vociferous disagreement with certain aspects of of what was being proposed. But whether it actually rejected the entire plea agreement, I'm not so sure. Instead, could you turn to the other issue, which I think is more interesting, at least to me, is the issue about the memory that the that the that the judge had about a promise or a broken promise. Can you turn to that argument? Yes, Your Honor. And I would like to reserve approximately two minutes if the court's permission. But yes, I do think that is an important issue as well. So I think the distinction here is deterrence, of course, as we know, is an appropriate factor under 3553A. The question then becomes, does a defendant's, we'll call it a promise or a statement, not to reenter the United States or it could be anything, depending on what the facts of the case are, does that promise then turn into an additional factor subsumed under the the deterrence consideration? Well, I guess my question is this. I think the judge indicated I don't remember talking about the promise. I don't remember exactly the promise. And then and then it's my understanding that the defendant said, no, that I didn't promise. So there was an affirmative statement indicating that that that that individual did not promise. So here where you have the judge saying he's a little unclear about the facts and then the defendant saying that didn't happen. Yet that was the basis of a decision of a higher of a higher sentence. Yes, Your Honor. And I understand it's the government's position that perhaps that was not the basis, that it was just an offhand comment. I think it's very clear from the transcript that that was a large part and I think a large part to the detriment of the appropriately considered 3553A factors. But if we take it in two parts, first of all, was that even an appropriate consideration? Because if it is, then in every sentencing, a district court judge may say to a defendant, do you promise not to do this again? And then as many times happens, as we know, that defendant then does the same thing again. And then that district court judge can then use that as a factor to impose a higher sentence. It is artificial. Can I I have a little bit of a different reading of the record because it seemed from my reading of the sentencing transcript, the court did not heavily rely on the broken promise in order to impose sentence on the illegal reentry charge. That for several paragraphs, it seemed as if the court was talking about the deterrence and those other factors. But I would agree with you in terms of turning to sentencing for the violation of supervised release. The court did rely on this broken promise or breach of trust, as it as it called it. And and I don't understand your client to be challenging that because that seems that does seem to be a permissible basis to to decide whether the the supervised release condition was violated. So isn't there a little bit of a distinction going on at sentencing? There is a distinction there. And I think the fact that there were two supervised release cases in addition to the illegal reentry complicates this case. However, respectfully, I do not agree with your honor's reading of the transcript, because actually the bulk of the district court's focus on whether there was a prior promise not to reenter actually happened during the sentencing for the illegal reentry. It was brought up again during supervised release. So what difference does it make if the sentencing court relied on thirty five fifty three factors? Let's say four or five. In fact, in this case, I believe multiple thirty five fifty three factors. Why should his questionable again, looking at the situation and the light most favorable to your client, let's say, why should his reliance on a single out of many factors that may be arguably questionable? There was no verification, no checking of the transcript. Why should that result in the sentencing being overturned? Well, first of all, as your colleague mentioned, the lack of verification is a real problem. And so I do want to make sure standing by that claim, assuming that's the case, I'll concede that seem that was an inappropriate factor. But there were other five or six appropriate factors under thirty five fifty three. A with that alone justify reversing the at least the sentencing decision, I think, to use a familiar phrase, one bad apple spoils the whole bunch. So in this case, if we have a factor that was I mean, if it was one offhand comment, perhaps maybe we could overlook that. I would say no. But it was returned to again and again. It was a factor that the court was heavily relying on. And even though the court then turned to other legitimate thirty five fifty three factors as the court, the panel sits right now, we do not know how the focus on the promise affected those other factors, how it affected the overall sentence. If it isn't proper, then the entire sentence must be vacated and remanded. I see that I have ten seconds. Would it make a difference if the sentencing court would have said I'm not going to rely on this issue? But it was my recollection that and then went off, I don't know, for five or ten minutes on the defendant for failing to abide by what the judge recalls or believes to have been a broken promise. If the district court explicitly said I don't like the fact that you made this promise and disobeyed it, but I'm not taking that into account, that would be a different factual scenario. That is not the scenario that we're looking at. And we'll give you time for rebuttal. But the court also had this colloquy with defense counsel at the start of the hearing when he's eliciting the council's own recollection, who confirmed the judge's recollection that there had been some sort of a promise or assurance that was sought and it was broken. And what do we make of that? Because that does seem to me to be some sort of record confirmation of what the district court itself recollected about what had happened the prior time that they had all appeared before him. Yes, Your Honor. And I was the defense counsel at the hearing. So I can speak to my own thoughts during that. And I will say I'll follow my own sword here. I most likely should have said I didn't read the transcript and I do not remember. I did not say that. I said, I believe perhaps he said this. Now, that I do not think is sufficient for the judge to then find that that fact is true, especially when Mr. Torres-Gilles then said, I wasn't able to say anything, right? I was over video. I wasn't able to say anything. That didn't happen. And so I do not think a defense counsel's, what I'll call them, is half-hearted comments about recollection are sufficient to use that as a fact. And if I remember correctly, it was the defendant's own comments immediately after yours that he didn't say that, correct? That is correct. And he also said that same thing during the following supervised release revocation hearing. Okay. Thank you, Your Honor. We'll hear from the government now. May it please the court, David Fawcett for the United States. Just jumping off of the last point about that second issue of the promise to re-enter, a reading of the record does show that although defense counsel was clear that he did not remember the exact words, that it was his recollection that the defendant had said something in the effect of, I won't come back into the United States, or they would try his best not to come back to the United States. But the judge himself said, I don't really remember, correct? And it seems like the judge didn't have the exact transcript in front of him or didn't remember the exact words. But based on his actions, the judge did make a comment that's in the record of believing that he and the defendant had come to a meeting of minds and suggesting that the previous sentence two years earlier had been based on, at least in part, the promise not to re-enter. But that's not my question. My question is whether or not he remembered. And didn't the judge say he wasn't really sure that he remembered? I believe the record shows that he had at least some memory. You're correct that I don't believe he said he remembered exactly. He said, I don't remember exactly. Yes. So what do we do with that? And a couple of us have been district court judges for a while, and we've handled dozens and dozens of sentencings. And we have, especially this kind of a case in an area where you handle several of these cases often, you see a lot of defendants. Sometimes you do make a mistake. And sometimes you do have a memory of someone that you've sentenced. And what do we do with the fact that he may have been misremembering some information and used that as at least partially a basis? I believe that's why the district court did ask the defense counsel about his recollection. And I think it was reasonable to rely on that, because although it's been clear— In spite of the defendant himself saying I didn't do that, I didn't say that? Correct. Because the defense counsel, it wasn't—and again, he said he didn't remember exactly what was said. But he didn't say that he didn't—that he was unsure about whether or not something to that effect was said. There wasn't any question that something to that effect was said. And when the defendant said that he hadn't made those statements, he did it in the context of saying that he had appeared by video and that he hadn't had an opportunity to say anything. And the district court reasonably discounted that statement because, as he said in the record, that's not the way that he went forward with sentencings. That he would not have gone forward without giving the defendant an opportunity to allocate and to speak. I mean, I think there are several times when defendants say, you know, I didn't say that. But isn't it the problem, the combination of both of those things, the inability of the judge to specifically remember and maybe have a foggy memory about that? And in addition, the specific recitation by the defense saying, I didn't say that. Those two things make this maybe a little bit different? I believe the district court could reasonably rely on the defense counsel's statement to bolster his own memory of the events, which seems to be what happened because he goes on to say that he relied, two years earlier, at least in part, on that promise. So it appears that his memory was maybe refreshed in some sense. It's hard to tell from the record exactly what happened. But I think that was a judgment called by the district court in whether to believe the defense counsel in his statements or the defendant. He had reason to question what the defendant was saying was true. Let me pick up on a question that Judge Jackson made earlier. Let's say he relied in part on imperfect memory, but there's no dispute that the court also relied on other sentencing factors, including deterrence and the criminal history with the frequent attempts to come back in. Is it reversible error? How do we assign, how do we evaluate whether this would be an error that requires vacating the sentence? Yeah, it is our position that it's not reversible error, that this is a plain error review because this is an unpreserved claim of procedural error. There was not an objection at the time. And if it were error to consider that, it doesn't appear that that would have affected any substantive rights of the defendant, or that it would have meted the other factors of a plain error review. Well, let me push back. Why not? Because, you know, as Judge Mendoza is pointing out, if the defendant is saying, I didn't say that, and isn't the defendant being injured by the fact that the court isn't taking time to, you know, go back and see what was exactly stated, if they're going to rely on that as a sentencing factor? If it was a sole factor, that may carry more weight, but because it was one factor in many, and a reading of the record would show that it was all these other 3553A factors that seemed to be the focus at the time of the actual sentencing for this new offense, that it doesn't appear to have detracted from those other considerations. In fact, it appears that because this was a sentencing on the two other supervisory release violations at the same time, it seems that the consideration really went more toward the determination of whether or not to put him on a term of supervised release in this case. Let's get back to the 11C1B issue here. If we take the judge, the sentencing judge, at his word, and he seemed pretty emphatic, I reject the plea agreement. I reject the plea agreement. If that is the case, if we take him at his word, what's the following? I understand now Rule 11 does not explicitly describe the results of the rejection of 11C1A, 11C1C. It kind of leaves 11C1B out there, right? Is there even a plea agreement in this context? If the sentencing court says, I reject the plea agreement, and if we take the judge at his word and say we start from scratch, even though there's no statutory mandate that the defendant be allowed to withdraw the plea, why shouldn't he withdraw the plea if we find, if the court says there is no plea agreement here? I'm not taking it. I don't believe using the words, I reject the plea agreement, logically follow into saying that there now is no plea agreement, that it retroactively erases the plea agreement or the factual basis or anything like that. He's saying he rejects the plea agreement, but because in Rule 11, there's no mechanism for rejecting or accepting a Type B plea agreement. Well, there is a requirement that a defendant be advised that in an 11C1B, the court may or may not accept the sentencing recommendation. And if, and the court is obligated, right, to inform a defendant of that possibility, listen, you have a recommended sentence, a requested sentence, I'm not bound to accept that. And if I don't accept it, you are not allowed to withdraw your plea. You agree with that? Correct. And so shouldn't that be a question that is included in the judge's standard colloquy at the time of the taking of the plea, which I don't believe occurred here, at least based upon my review of the record? Well, at the time of the plea itself, it was stated that the plea agreement itself... It was in the plea agreement, but the judge, I thought my reading of the statute seems to require the judge to advise the defendant. I believe that happened here as well, Your Honor, that at the time that the plea was taken by the magistrate judge, the defendant was informed that this is not a plea that binds  Okay. And so you agree then that if the magistrate judge failed to advise the defendant, that if the sentencing court rejects the sentencing recommendation, he would still not be able to withdraw the plea. In other words, if he did not offer that advice or that rule, inform the defendant of that right or that rule, that somehow it's your view that the plea agreement is still valid and should stand? Yes, Your Honor. The defendant was clearly on notice that that was the type of plea agreement. It was in the plea agreement. I believe it was made clear at all stages that that's what would happen. And what happened here, it seems, is that the district court, by purporting to reject the plea agreement, was really saying that he rejected those sentencing recommendations. Even though your opponents clearly and specifically and directly requested the court to clarify the statement? Yeah. And when Mr. Doyle asked the court to clarify that statement, what he asked was, are you rejecting the plea agreement in its entirety or just declining to impose the fast-track departure? There was more to the sentencing recommendation than just the fast-track departure. So that leaves room for the district court to say, no, there are other parts of this I'm rejecting as well. So I have one more question. One last question. Why would any counsel advise their client, even in a fast-track situation, to even enter into an 11C1B plea with that possibility looming? In other words, isn't it in the government's interest to promote 11C1Bs? I believe it is. You are asking me to step into the mind of a defense attorney a little bit, and I'll do that the best that I can. But it seems in this situation, it is in the interest to have that type of plea agreement. But there's the understanding all along that the judge may not go along with it. But it certainly, I believe, would be an important thing for the defendant to have the government also giving a particular recommendation that would likely have some effect on the outcome, even though it's not necessarily a binding. And so, just in closing, the district court lacked authority to, in any meaningful sense, reject the plea agreement. He was, at this point, just essentially saying that he did not agree, that he did not want to put his imprimatur on this agreement, which is fine. And because there was no authority to reject that plea agreement, that statement that he rejected, it had no legal effect in this case, and we ask that the sentence be affirmed. Thank you. Thank you. Mr. Drell, we'll give you a minute. Thank you again, Your Honors. I wanted to focus, in terms of the first issue in my opening brief, in broad strokes. From my understanding of the government's general arguments, they were saying that the district court here was essentially blowing off steam, and that the word reject, even after my attempt to clarify, was meaningless. I think this court and all courts, probably, when a district court judge makes a finding, a ruling, a statement, we should presume, without knowing more, and without any explicit contrary language, such as in Rule 11, that those words have meaning, that they do have effect. And here, as we often do, a plea agreement is a contract. If two people enter into a contract, they believe it will be followed. If it is then later explicitly rejected, I think we have to assume that that is the case. I was looking to see that there was something, the plea colloquy, that informed the defendant about this Type B agreement, and I believe there is. Would you agree? I would agree that the magistrate judge who accepted the plea informed Mr. Torres that the district court judge did not have to follow the sentencing recommendations. That does not include an entire rejection of the plea agreement. Okay. I see my time is up. Actually, 10 seconds, Your Honor. I would say that I want to return to the fact that the district court judge here created a factor in the deterrence by eliciting a promise and then using that against Mr. Torres. I think it's inappropriate. That can be done in every case and always used against every defendant, if we allowed that. Thank you, Your Honor. Thank you, counsel, for your helpful arguments, and the matter will stand submitted.
judges: SANCHEZ, MENDOZA, Jackson